**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **DONALD R. JOHNSON, ID # 1396188,**   )  <br>    Petitioner,   )  <br>vs.   )   No. 3:11-CV-3032-B (BH)  <br>   )  <br>**RICK THALER, Director,**   )   Referred to U.S. Magistrate Judge  <br>**Texas Department of Criminal**   )  <br>**Justice, Correctional Institutions Division,**  )  <br>    Respondent.   ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I. BACKGROUND**

On November 4, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for aggravated assault in cause number F05-73212-KH in Dallas County, Texas. Respondent is Rick Thaler, Director of TDCJ-CID.

**A.   Factual and Procedural History**

On October 11, 2005, the State indicted petitioner for the family violence aggravated assault of Donna Hymel. (Clerk's Record ("C.R."):2-3). He pleaded not guilty and was tried before judge on September 21, 2006. (R. 1:9).

Donna Hymel testified that she began dating petitioner in 2003, and that she dated him for about three years. On September 10, 2005, she was with petitioner at his nephew's home when he began smoking crack cocaine. He became irrational and paranoid, convinced that she was trying to hurt him. Petitioner forced her to have sex and broke her ankle when she tried to stop him from disassembling her cell phone. He made her sit in the bathroom while he called someone to buy more

cocaine, and he punched her in the face three times as he was walking by. After she was able to leave the bathroom and put her shorts back on, petitioner hit her on the side of her head with a glass mug, an injury that ultimately required six stitches to repair. Petitioner then grabbed a knife and sliced her throat, an injury that needed twelve internal and external stitches to repair. Petitioner's nephew eventually came into the room, threw petitioner out of the room, and called the police. (R. 1:15-20, 26). Admitted into evidence at trial were pictures taken at the hospital later that day, as well as some taken two days later, and her medical records from the hospital. (R. 1:21-24).

Petitioner testified that he sometimes used crack cocaine every day and would use cocaine from Fridays to Mondays. Petitioner acknowledged that he was using crack during the assault, and that the victim would try to get him to stop. He testified that he was not his normal self when he used crack cocaine, that he had gone to Parkland at one point to get over his addiction, and that he was sent to Turtle Creek Manor for drug rehabilitation when he was on probation and tested positive for drugs. He was diagnosed as a bipolar schizophrenic but was unable to afford the medications prescribed. (R. 1:47-50). Petitioner also testified that he had never been violent towards the victim before and that he did not believe it would have happened if he had not been on drugs. (R. 1:49, 51).

On cross-examination, petitioner acknowledged that he had numerous convictions dating back to the late 1970s, including two assaults, three burglary convictions, theft, credit card abuse and fraud, and he had two prior aggravated assaults for which he received deferred adjudication. (R. 1:54-58). He also maintained that the victim was lying about him breaking her ankle, but he did not recall whether or not he punched her, hit her with a mug, or slit her throat. (R. 1:60-1).

The judge convicted petitioner of aggravated assault with a deadly weapon as charged in the indictment. (R. 1:68). Petitioner pled not true to the two enhancement paragraphs alleged in the

2

indictment. *Id*. After a punishment hearing, the trial judge found the two enhancement paragraphs to be true and sentenced petitioner to forty-five years imprisonment. (R. 1:99).[1] Petitioner's conviction was affirmed on direct appeal. *Johnson v. State*, 2007 WL 2600804, No. 05-06-01595-CR (Tex. App.–Dallas, Sept. 11, 2007, pet. ref'd). His petition for discretionary review was refused on March 12, 2008. *See* PD-1473-07.

Petitioner filed a state habeas application raising the same claims as in his federal petition, as well as some additional claims, on March 5, 2009. (State Habeas Transcript "S.H.Tr."[WR-42,516-05]:7). On July 6, 2011, the state habeas court issued findings recommending that relief be denied. *Id*. at 48-55. On October 19, 2011, the Texas Court of Criminal Appeals denied his state application on the merits without a written order based on the trial court's findings. *Id*. at cover; *see also Ex parte Johnson*, No. WR-42,516-05 (Tex. Crim. App. Oct. 19, 2011).

**B.    Substantive Claims**

On November 4, 2011, petitioner filed his federal habeas petition (Pet.), alleging that his trial counsel rendering ineffective assistance of counsel by:

> -failing to investigate potential mitigating witnesses who could have testified at the punishment phase with respect to his bipolar disorder and drug abuse and failed to enter into evidence a favorable competency report by psychiatrist Lisa Clayton (Mem. at 3, 19);
>
> -failing to request a pretrial hearing on the defendant's motion for discovery to learn about photographs offered by the State as exhibits at trial (Mem. at 5-6);
>
> -failing to object to an allegedly defective indictment (Mem. at 7-8);
>
> -failing to file a motion for continuance and instead coercing petitioner into standing

---

[1] The trial judge also adjudicated guilt in two prior aggravated assault cases, Cause Nos. F04-53199 and F04-53200, based on the new conviction and other violations of his probation, and he sentenced petitioner to twenty-five years in both cases, to be served concurrently with the third conviction. (R. 1:98-99). Petitioner does not challenge these other two convictions in his federal petition.

3

>trial that day (Mem. at 8-9);
>
>-failing to adequately prepare for trial by presenting an alternate theory (Mem. at 9-10); and
>
>-failing to request a medical expert to review medical records entered into trial regarding the injuries sustained by the victim and failing to object to testimony given by the victim about her injuries (Mem. at 10-12).

Respondent filed a response on February 24, 2012, and provided the state court records. Petitioner filed a reply brief on March 13, 2012.

## II. AEDPA STANDARD

>Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

4

eral law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by failing to: (1) investigate and

5

present evidence and testimony from potential mitigating witnesses regarding his bipolar disorder and drug abuse (Mem. at 3, 19); (2) request a pretrial hearing on the defendant's motion for discovery (Mem. at 5-6); (3) object to an allegedly defective indictment (Mem. at 7-8); (4) file a motion for continuance, instead coercing petitioner into standing trial that day (Mem. at 8-9); (5) adequately prepare for trial by presenting an alternate theory (Mem. at 9-10); and (6) request a medical expert and object to testimony given by the victim about her injuries (Mem. at 10-12).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability suffi-

6

cient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.**     **Mitigation Evidence**

Petitioner first alleges that his trial counsel was ineffective because he did not properly investigate and present potentially mitigating evidence regarding his bipolar disorder and drug abuse at the punishment phase of his trial. He claims trial counsel should have spoken to and called Dr. Harrum from Turtle Creek Manor Rehabilitation to testify about his bipolar disorder, and that he should have investigated Dr. Lisa Clayton's report and had her testify about his need for drug treatment. (Mem. at 3-5).

At petitioner's trial, counsel called psychiatrist Dr. Michael Pittman as a punishment witness. Dr. Pittman testified that he examined petitioner on March 9th of that year and issued a report at the trial court's request. He concluded that based on petitioner's history, he most probably had bipolar disorder. He did not observe symptoms compatible with this diagnosis when he examined petitioner, but petitioner at that time was taking psychiatric drugs to relieve those symptoms. (R. 1:41-42). Dr. Pittman reviewed petitioner's medical records from Parkland Hospital for the time he had been in jail, which showed he had been prescribed an antidepressant, a mood stabilizer, and an antipsychotic medication. *Id*. at 43. He also noted in his report to the court regarding petitioner's competency to stand trial that long-term drug abuse can cause behaviors that look like bipolar disorder and that will require medication later. *Id*. at 44. The record also reflects that psychiatrist

Dr. Lisa Clayton examined petitioner prior to trial regarding his mental competency and mental condition and issued a report that was placed in the court's file. (C.R.:19; 24-26). Her report stated that she had examined petitioner on March 23, 2006, that he was competent to stand trial, that he had a severe polysubstance dependence problem, and that he would benefit from a drug treatment program specifically for criminal defendants. Although her report noted that petitioner had reported that he had previously been diagnosed as having bipolar disorder, it also noted that he was using drugs at the time of the diagnosis. She gave no opinion regarding any possible mental illness petitioner might have. *Id*. at 24-26.

Before concluding that counsel was not ineffective for failing to properly investigate and present evidence of his bipolar disorder and drug abuse, the state habeas court found that petitioner's trial attorney died in December of 2006. (S.H.Tr.:49). The state court therefore found that the record was silent as to whether or not counsel spoke to Dr. Harrum from the drug rehabilitation center, and if so, whether any potential testimony he might have given would have been beneficial to petitioner. *Id*. at 51. The state habeas court also found that while Dr. Clayton did not testify, both her report on her examination of petitioner and Dr. Pittman's report were in the court's file and available for the judge's review. *Id*. at 51-52.

The state habeas court's denial of this claim is not an unreasonable application of the *Strickland* standard. While petitioner complains of counsel's failure to have Dr. Harrum and Dr. Clayton testify at his trial about his bipolar disorder and drug abuse, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To

8

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner has not shown that Dr. Harrum was available to testify and would have done so, or that his proposed testimony would have been favorable.

Furthermore, Dr. Pittman testified that petitioner had been previously diagnosed as having bipolar disorder, he testified as to the substance of petitioner's medical records since he was incarcerated, and he agreed with the diagnosis. Petitioner's bipolar diagnosis was therefore presented to the court. As for Dr. Clayton, while she presumably would have testified that petitioner was a drug addict who would benefit from rehabilitation, her report was available to the trial judge, and it was undisputed at trial that petitioner was a long-term drug addict. Petitioner has failed to show a reasonable probability that additional testimony about his bipolar diagnosis and drug addition would have resulted in a different sentence. This ground is without merit.

**B.     Pretrial Hearing**

Petitioner next contends that counsel was ineffective for failing to seek a pretrial hearing in order to have an opportunity to view photographs taken of the victim in the hospital showing the extent of her injuries. If had counsel done so, he would have seen the photographs at the hearing instead of seeing them for the first time at trial. (Mem. at 6).

At trial, counsel objected to photographs of the victim's injuries on the basis that they had not been provided to him before trial, and that they were more prejudicial than probative. The prosecutor responded that the State had an open file policy, and the photographs were in the file.

9

The trial court overruled counsel's objection. (R. 1:22). The state habeas court denied this claim (S.H.Tr.:cover, 55), and this denial is not an unreasonable application of federal law.

Petitioner has failed to establish prejudice because he has failed to show a reasonable probability that had counsel viewed the photographs in a pretrial hearing, the result of his trial would have been different. The photographs show the victim's injuries immediately after the assault. (State's Ex. 9-15). They were relevant evidence. The victim testified to her injuries, and the trial judge saw the scar on her neck. (R. 1:25). Furthermore, trial counsel did receive the victim's medical records and did not object, and they were admitted into evidence. (R. 1:24). Given the victim's testimony and her medical records in support of her testimony, petitioner has not shown that the admission into evidence of photographs of her injuries had any effect on his sentence. This claim is therefore without merit.

**C.    Indictment**

Petitioner asserts that his attorney was ineffective for failing to object to a "defective" indictment that charged him with "intentionally, knowingly, and recklessly" causing serious bodily injury rather than charging him with "intentionally, knowingly, or recklessly" causing serious bodily injury, as the relevant statutes read. (Mem. at 7-8); *see* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a) (West 2005). The state habeas court found that counsel was not ineffective for failing to object to the indictment because the indictment properly charged the offense of aggravated assault with a deadly weapon and therefore was not fundamentally defective. (S.H.Tr.:53). This is not an unreasonable application of the *Strickland* standard.

It is well settled that, under Texas state law, the indictment may allege differing methods of committing an offense in the conjunctive, and a defendant may be found guilty under any of the

10

theories. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Therefore, counsel was not ineffective for failing to object to an indictment that was proper under state law. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance). This claim is without merit.

**D.     Motion for Continuance**

Petitioner next contends that counsel was ineffective for failing to request a continuance of the trial, instead coercing him to stand trial for his new aggravated assault case on the same day that the motion to revoke probation in his previous two aggravated assault cases was tried. (Mem. at 8-9). He claims that trial counsel convinced him that the trial judge would be amenable to drug rehabilitation. *Id*.

The state habeas court found that the trial judge was amenable to sentencing offenders to drug treatment programs during her time on the bench and noted that petitioner was ordered into a drug treatment facility for thirty days as a condition of probation for his prior offenses. (S.H.Tr.:54). That court concluded that petitioner had failed to establish ineffective assistance of counsel. This is not an unreasonable application of federal law.

As in his two prior aggravated assault cases, petitioner was charged with the second-degree felony of aggravated assault, enhanced by two prior felonies. (C.R.:2). Under Texas state law, if the judge found the two enhancements to be true, his minimum sentence would be twenty-five years. *See* TEX. PENAL CODE ANN. § 12.42.(d) (West 2005). Because his minimum punishment was greater than ten years, the trial judge could not sentence petitioner to probation under state law, *see*

11

TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3(e) (West 2005).  However, the record reflects that she stated that one possible option was for her to find the allegation that he had violated his previous deferred adjudication probation by committing a criminal act "true" and then continue him on deferred adjudication in his prior two cases. (R. 1:68).

The record reflects that since petitioner did not and could not dispute the facts of the aggravated assault case, and because he had been convicted of previous felonies that enhanced the aggravated assault charge, counsel attempted to have him avoid a long-term sentence by presenting evidence of his drug use to convince the trial judge to again sentence him to deferred adjudication. Petitioner has not shown that had a motion for continuance been requested and granted, there is a reasonable probability that his sentence would have been different.  While counsel argued that petitioner committed the assault due to his drug addiction (R. 1:96-7), the judge had already given him deferred adjudication in two prior cases and had already ordered drug rehabilitation as a condition of probation. Petitioner assaulted the victim shortly after he left this rehabilitation.  Rather than a sentence up to and including life, the trial judge gave petitioner forty-five years' imprisonment.  Trial counsel was not ineffective for seeking deferred adjudication on his client's behalf, and he was not ineffective simply because the judge declined to sentence petitioner to deferred adjudication for a third time given his extensive criminal background and the extent of the victim's injuries.  This ground is without merit.

**E.    Trial Preparation**

Petitioner further asserts that his attorney was ineffective because he did not present an alternate theory and instead "sided" with the prosecution and their witnesses. The state habeas court found that counsel's trial strategy appeared to be based on petitioner's paranoid behavior when he

smoked crack cocaine, and it concluded that counsel was not ineffective in this regard. (S.H.Tr.:54-5). This is not an unreasonable application of the *Strickland* standard.

Petitioner's sister testified that petitioner became paranoid after he smoked crack and was unaware of his behavior. (R. 1:86, 88). Petitioner testified that he was addicted to drugs, that he was not his normal self on the day of the assault, that he did not know what came over him, that he did not remember most of what happened, and that he did not believe that the assault would have happened if he had not been on drugs (R. 1:47-48, 51). The victim also testified that petitioner became irrational and paranoid when he smoked crack. (R. 1:16-7, 26). Counsel also presented testimony from Dr. Pittman regarding petitioner's bipolar disorder and drug abuse. Counsel also argued that petitioner was, in a sense, mentally ill when he committed the assault, that he did not remember assaulting the victim and did not intend to assault her, that he was not a violent person, and that he instead had a serious drug problem. (R. 1:95-6). Trial counsel did present a defense at trial, and petitioner has not pointed to any better defense. Furthermore, he has not shown that there is a probability that his sentence would have been different had counsel offered a different defense. This ground is therefore without merit.

**F.     Medical Expert**

Finally, petitioner asserts that counsel was ineffective for failing to file a motion to obtain the assistance of a medical expert who could aid in understanding the victim's medical records and testify at trial regarding her injuries. He also asserts that because counsel did not obtain a medical expert, he failed to object to the victim's testimony about her injuries. (Mem. at 11-12).

The state habeas court found that counsel was not ineffective in this regard because trial counsel received the victim's medical records prior to trial, petitioner had failed to show that the

13

records were so complex as to require a medical expert's review, and petitioner had failed to show that any testimony from an expert regarding her injuries would have resulted in a different verdict. (S.H.Tr.:53). That court also found that counsel was not ineffective in failing to object to her testimony about her injuries, because counsel did object to her testimony as hearsay, and this objection was sustained. *Id.*; (R. 1:28).

The state habeas court's findings are not an unreasonable application of the *Strickland* standard. An indigent defendant is entitled to court-appointed experts in certain circumstances, such as where he has made a preliminary showing that the expert's subject matter will be an issue at trial. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). However, a defendant requesting an expert must demonstrate more than the mere possibility of assistance. He is entitled to appointed experts only if the evidence is critical to the conviction and subject to varying expert opinion. *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). Petitioner has not shown that had a medical expert been requested to assist in understanding the victim's injuries, one would have been appointed. He has also not shown that counsel was unable to read and understand the medical documents, and he has not shown that, had an expert been appointed, the result would have been different. Counsel objected to hearsay testimony when it was given. It was undisputable, however, that petitioner broke the victim's ankle, punched her in the face, slammed a glass mug on her head, and slashed her throat. Given the extensive injuries inflicted by petitioner, he has not shown a reasonable probability that, had an expert been requested and appointed, he either would not have been convicted or would have received a lesser sentence. This ground is without merit.

## IV. EVIDENTIARY HEARING

Based on the relevant filings and the proceedings held in state court as reflected in the state-

court records, an evidentiary hearing appears unnecessary.

## V. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 29th day of September, 2012.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15